## Baird, Appellant, *v.* Schuylkill River East Side R. R.

*Railroad—Eminent domain—Loss of storage space—Charge.*

In condemnation proceedings to recover damages for injuries caused by the construction of a railroad through a marble yard abutting on a river, where the plaintiff claims loss of storage space under a traveling crane, it is not error for the court, after correctly charging that the measure of damages is the difference between the market value of the land before and after the construction of the railroad, to affirm the following point for defendant : If the jury believes from the evidence that the loss of storage space under the traveler is the principal cause of the plaintiff's claim that the railroad has injured the property, and that such space under the control of the same traveling crane can be duplicated by suitable mechanical appliances so as to restore to the plaintiff the equivalent amount of storage space under the control of his machinery, rendering the mill property available for its full use, then the cost of such appliances can be considered, not as an item of damage, but as a measure of the injury, if any, to the land, due to the taking of a portion of the space controlled by the traveler and heretofore used for storage purposes.

Argued Jan. 9, 1893.   Appeal, No. 468, Jan. T., 1892, by plaintiff, John Baird, from judgment of C. P. No. 1, Phila. Co., Dec. T., 1888, No. 670, on verdict for plaintiff.   Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM, MITCHELL and DEAN, JJ.

Appeal from award of jury assessing damages in the sum of $151,250.

At the trial it appeared that plaintiff's property was situated

at Twenty-fourth and Locust streets, running westwardly to
the Port Warden's line on the Schuylkill river. It was occu-
pied as a marble manufactory and yard. The business consisted
largely of importing blocks of marble from Italy, and in manu-
facturing the marble for the market. A traveling crane was
used in transporting the marble from the wharf to the mill.
Plaintiff claimed that the space directly under the traveling
crane or traveler was much diminished for storage purposes by
the construction of the railroad.

The court charged in part as follows:

" This particular property was a marble yard. You are not
to consider what that property was worth only as a marble yard
and factory—and when I say 'yard' I mean yard and manu-
facturing establishment—you are not alone to do that, either
before or after the railroad came there, but taking it before the
railroad came there to first consider that proposition and get at
the value of that property as it stood before it was affected by
the coming of the railroad, and what it was worth for the best
uses to which it could be put. Then you will consider the
next question, what was it worth after the railroad came there.
Not necessarily as a marble yard and factory, but for the best
use it could be put to. You can probably easily realize that
there might be a condition of affairs where upon a lot of ground
a dozen small dwelling houses were built that the coming of a
railroad, either in front or behind them, might make them prac-
tically useless as dwelling houses, but yet that property might
become very largely valuable as a manufacturing establishment;
and if the owner of those houses should come into court and
ask damages against the railroad company, a jury would have
no right to consider simply their value as dwelling houses; but
you ought to say what is the market value of that property
before the railroad came there for all the purposes and for the
best purposes to which it could be put before, and what is the
value of it after the railroad came there. If the railroad in-
creased the value of the property, although it may have destroy-
ed the value of the houses for dwelling houses, for manufacturing
or any other purposes, and that more money could be gotten for
it than before, the plaintiff would have no proper claim for
damages. . . .

" Mr. Baird contends, as one very large element of damage to

his property, that the storage capacity, which he formerly had under his trestling, is very largely interfered with by the fact that the railroad tracks cross it. The fact that that amount of storage capacity is gone does not admit of any contention. The defendants attempted to show that that injury or damage can be supplied by an additional track on the south side of his trestling, and in that way recovering the lost storage capacity by having a trestling there. You have seen the mechanism, and the models will be before you, and one set of engineers have given you their thought upon the subject, whilst other witnesses have condemned it, saying it is not practicable, and giving you their reasons. Now you will consider in that respect the amount of practical knowledge a man has in relation to the subject he speaks of, and when he gives his reasons you will consider the soundness of those reasons as they appear to your understanding, and weigh him in that scale.

"If you come to the conclusion that this property, as I have already said, is not depreciated in market value by the construction of the railroad, you, of course, will then give a verdict for the defendant. If you come to the conclusion that the property is worth less now than it was before the railroad came there by reason of the coming of the railroad, you will then give to the plaintiff that amount of damages, and you ought to endeavor to ascertain that as accurately as you possibly can. If this plaintiff has been injured, he is entitled to full compensation for his injury ; and, in that connection, without intending to indicate to you whether you ought to find for the plaintiff or for the defendant, but only to say if you do conclude that the plaintiff is entitled to damages, or his property was injured by the coming of the railroad, you ought to give him that amount, and add to it interest, from the time the railroad occupied the property, in one sum as the amount of the damage that he has suffered."

The defendant presented the following point:

"15. If the jury believe from the evidence that the loss of storage space under the traveler is the principal cause of the plaintiff's claim that the railroad has injured the property, and that such space under the control of the same traveling crane can be duplicated by suitable mechanical appliances so as to restore to the plaintiff the equivalent amount of storage space

under the control of his machinery, rendering the mill property available for its full use, then the cost of such appliances can be considered, not as any item of damage, but as a measure of the injury, if any, to the land, due to the taking of a portion of the space controlled by the traveler, and heretofore used for the storage purposes." Affirmed. [1]

Verdict and judgment for plaintiff for $49,600. Plaintiff appealed.

*Error assigned* was instruction, quoting it.

*John G. Johnson, Wm. Henry Lex* with him, for appellant.—The erroneous affirmance of a special point is not within the decisions which disfavor a reversal, if the whole scope of the general charge be correct, despite trival error in minute parts : Carothers v. Dunning, 3 S. & R. 379; Pierce v. Cloud, 42 Pa. 102; Ins. Company v. Schroeffler, 42 Pa. 188; Winsor v. Maddock, 64 Pa. 231; Patterson v. Kountz, 63 Pa. 246; Ridgway v. Longaker, 18 Pa. 219; Little Schuylkill Navigation R. R. v. French, 2 W. N. 718.

The point ignored the question of the economical use of the appliances and whether the new space required could be spared without destruction of the value of the wharf.

*W. H. Addicks*, for appellee.—The whole charge is to be considered, not a single point; and if there is anything in a single point that may be considered ambiguous, yet, if it is explained in the general charge or in the answer to the other points, there is no error : Collins v. Leafey, 124 Pa. 211; Carothers v. Dunning, 3 S. & R. 378; Little Schuylkill Nav. R. R. & Coal Co. v. French & Funk, 2 W. N. 718; Pierce v. Cloud, 42 Pa. 102; Lycoming Ins. Co. v. Schroeffler, 42 Pa. 188; Winsor v. Maddock, 64 Pa. 235; Patterson v. Kountz, 63 Pa. 250; Ridgway v. Longaker, 18 Pa. 219; Flower v. R. R., 132 Pa. 524; Gorgas v. R. R. Co., 144 Pa. 1.

The point was based on Kersey v. R. R., 133 Pa. 234, and Chambers v. South Chester, 140 Pa. 510.

PER CURIAM, January 23, 1893 :

The single assignment of error here alleges that the learned court below erred in affirming the defendant's fifteenth point.

A careful consideration of the able argument of the learned counsel for the appellant fails to convince us that the learned judge below committed any substantial error. His charge was a clear and accurate presentation of the case, and taking the answer to the point in connection therewith, we are unable to see how the jury could have been misled. A discussion of the case is unnecessary.

Judgment affirmed.